IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sugar Grove Township       :
           :   No. 937 C.D. 2017
     v.        :
           :   Argued: May 9, 2018
Iva H. Byler, Individually and as   :
Trustee of the Little Ash Trust,    :
      Appellant    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ROBERT SIMPSON, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH           FILED: July 20, 2018


    Iva H. Byler (Appellant) appeals from the April 13, 2017 order of the Court of Common Pleas of the Thirty-Seventh Judicial District, Warren County Branch (trial court), directing Appellant to remedy multiple violations of the Pennsylvania Sewage Facilities Act (Sewage Facilities Act)[1] and its accompanying regulations[2] with respect to privies and newly-built residences on her property, or face eviction therefrom, and to pay up to $100.00 per month towards fines and/or penalties stemming from these violations.

---

    [1] Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§750.1-750.20a.

    [2] These regulations can be found in Title 25, Chapters 71-73 of the Pennsylvania Code.

## Facts and Procedural History

Appellant, a member of the Old Order Amish, resides at 1050 Wilson Road, Sugar Grove, Pennsylvania (the Property). The Property had been conveyed to Appellant and her husband by a recorded deed dated November 20, 1997. After the passing of her husband, Appellant executed a quit claim deed on September 17, 2010, transferring ownership of the Property to the Little Ash Trust, with her being the sole trustee. (Trial court op. at 2.)

On October 18, 1993, Sugar Grove Township (Township) enacted Ordinance No. 93-10-1, which was subsequently repealed and replaced by Ordinance No. 12-11-06, hereinafter referred to as the Privy Ordinance. (Complaint at ¶ 8.) Section IV(A) of the Privy Ordinance states that "no privy shall be installed, utilized or otherwise placed in service by any owner or person until said owner or person has obtained a privy permit from the Township." *Id.* There are allegedly two privies on the Property, one of which was constructed prior to the enactment of the Privy Ordinance. The Property consists of three residences, all of which are served by the privies, but none of which have been granted a privy permit. Two of these residences were constructed after the adoption of the Privy Ordinance.[3] (Complaint at ¶9.)

## Complaint and Answer

---

[3] As will be discussed below, there is a privy associated with the main residence at the Property that was constructed well before the enactment of the Privy Ordinance. A second privy was allegedly constructed subsequent to the enactment of the Privy Ordinance at the same time as the new residences were constructed. However, testimony before the trial court indicated that this second privy may not have been a privy at all and merely consisted of an outhouse with a bucket.

On August 13, 2015, the Township filed a complaint against Appellant alleging that she unlawfully made use of privies on the Property in violation of the Sewage Facilities Act regulations; failed to undertake soil and site suitability testing to determine if privies are an appropriate method for disposing of sewage on the Property as required by these regulations; failed to obtain the necessary permits as required by the Sewage Facilities Act; covered and occupied structures utilizing an on-lot sewage system without having the system inspected and approved by the Township in violation of the Sewage Facilities Act; created a nuisance under the Sewage Facilities Act by discharging untreated or partially treated sewage into the ground and/or waters of the Commonwealth; and failed to obtain the necessary permits, submit site plans, or obtain certificates of occupancy as required by the Uniform Construction Code (UCC) relating to the construction and occupation of the two later-built residences on the Property.[4] (Complaint at ¶¶11, 13, 16, 19, 25-27, 29-41.)  The Township had repeatedly sent Appellant letters and notices of the violations beginning in November 2012, but Appellant took no steps to bring the Property into compliance, thereby necessitating the filing of the complaint.  (Complaint at ¶¶42-56.)

The Township's complaint included five counts.  In Count I, the Township sought injunctive relief to compel compliance with its Privy Ordinance.  In Count II, the Township sought injunctive relief to compel compliance with the Sewage Facilities Act.  In Count III, the Township sought abatement of the alleged nuisance under the Sewage Facilities Act.  In Count IV, the Township sought relief under the UCC.

---

[4] On June 1, 2004, the Township adopted the Uniform Construction Code Ordinance, Ordinance No. 04-06-01, which in turn adopted the provisions of the UCC as its municipal building code.  This Ordinance further noted that the relevant UCC provisions could be found in Title 34, Chapters 401-405 of the Pennsylvania Code.

3

Finally, in Count V, the Township sought injunctive relief to remove Appellant and any other residents from the Property. (Trial court op. at 1.)

Appellant filed an answer essentially denying the material allegations of the Township's complaint. More specifically, Appellant alleged the following: the Property was served by one privy, which was installed by a prior owner of the Property well before enactment of the Privy Ordinance, thereby rendering said Ordinance inapplicable to her; neither the Privy Ordinance nor the UCC override her constitutionally protected religious rights as a member of the Old Order Amish; and the later-built structures were merely temporary dwellings. (Answer at ¶¶8-38.)

**Trial Court Hearings**

The trial court conducted two days of hearings, on October 27 and December 1, 2016, respectively. The Township presented the testimony of Kathie Liffner, its Secretary/Treasurer. Liffner testified as to her belief that the Property consists of three residences, the last being built between 2013 and 2015. She identified the Privy Ordinance enacted by the Township and noted that it requires a permit for a privy, with no exceptions for temporary dwellings or religious reasons. She indicated that Appellant has not obtained a privy permit for the Property. Liffner also identified a Township ordinance adopting the UCC, which requires a permit prior to constructing a building in the Township. She stated that Appellant was never issued a building permit for construction on the Property. She further identified invoices totaling $7,791.18, $250.00, and $58.12, respectively, which represented the expenses incurred by the Township in pursuing the matter against Appellant and which the Township sought to recover as costs. Moreover, Liffner noted that the Township found Appellant to have six violations of the Sewage Facilities Act, with an ongoing weekly penalty

4

which totaled $160,000.00 as of the date of the hearing. (Reproduced Record (R.R.) at 13a-26a.)

On cross-examination, Liffner could not state whether a privy ordinance existed prior to 1993, or whether Appellant had installed a privy since 2004 when she first became the Township's Secretary. Liffner could only testify that no privy permit was issued during that time. She noted that the Township opted to impose the maximum weekly penalty of $2,500.00 for violations of the Sewage Facilities Act. As to the other two residences on the Property, Liffner indicated her belief that at least one of the residences was vacant as of the date of the hearing. (R.R. at 27a-38a.)

The Township next presented the testimony of Edward Cardy, a building code administrator for, and vice president of, Building Inspection Underwriters (BIU), a company that acts as an administrator of the UCC for the Township. Cardy stated that inspectors working under him have been trying to secure building permits for structures and additions built on the Property. He testified that he ultimately issued a rule to show cause against Appellant regarding her violations of the UCC, to which she never responded. If an owner does not respond to a rule to show cause, he indicated that there is no legal right to occupy a structure, and any occupants must vacate the structure. He noted that no structure on the Property has been issued a certificate of occupancy and he specifically denied ever informing anyone that an occupancy permit was not required. Cardy noted that there are exemptions from the UCC requirements for temporary dwellings, but these do not apply to residences. He also noted that there are religious exemptions, but they only extend to specific portions of buildings, such as electrical facilities, plumbing facilities, and certain wood construction material. He testified that, even if certain exemptions applied, Appellant would still need a permit,

5

but that Appellant never requested a permit or a religious exemption. (R.R. at 42a-57a.)

On cross-examination, Cardy admitted that had Appellant's primary residence been constructed in 1997 or earlier, a building permit would not have been required as the UCC only came into effect in 2004. He admitted that he was unaware if either of Appellant's sons had applied for a temporary structure permit with the Township. He noted that neither of the later-built structures had been inspected, as a permit is a prerequisite to inspection. He also admitted that the exemptions apply to religious sects and the Amish are the only sect that he is aware of to which electrical, plumbing, and lumber exemptions apply. (R.R. at 58a-65a.)

The Township next presented the testimony of John Burnell, a BUI building inspector who worked with the Township. Burnell described a shed as an accessory building, which does not require a building permit, that is under 1,000 square feet and adjacent to a single-family dwelling. He noted that all residences, regardless of size, require a permit and inspection. He stated that he first came into contact with the Property in 2012 at the request of the Township because of new construction on site without a permit. He visited the Property in November 2012, observed what appeared to be a new addition to the back of the primary residence, and advised Appellant and one of her sons that permits and inspections were required for the same. He also noted what appeared to be a shed on the Property, which Appellant's son advised would be his residence. He stated that Appellant never sought a permit for the addition or her son's new residence. Burnell returned to the Property in February 2015 and observed what appeared to be another shed that Appellant's son stated would be a residence for his brother. He testified that Appellant never sought a permit or requested an exemption for the addition or any of the two new residences on the Property. Burnell

6

identified a letter sent to Appellant in 2012 advising that a building permit was required for the addition, as well as subsequent letters and notices of violations and the rule to show cause order issued by his supervisor, Cardy. Burnell testified that Appellant made no effort to comply with the UCC requirements. (R.R. at 70a-89a.)

On cross-examination, Burnell admitted that there was no provision for temporary dwellings in the residential section of the UCC. He noted that there were provisions for hunting or recreational camps but was unsure if there was any limitation on the number of days they could be occupied. He stated that he was familiar with Amish sheds, which are exempt under the UCC, and the lumber used to construct the same. He noted that he has seen sheds built on skids, similar to the two newly-built structures on the Property. (R.R. at 90a-98a.)

The final witness presented by the Township at the October 27, 2016 hearing was Todd Fantaskey, the Township's sewage enforcement officer. Fantaskey testified that he visited the Property in February of 2015 after receiving a call from Liffner, the Township's secretary, regarding some new construction there, talked to Appellant, and took photographs of what he described as three residences. He proceeded to describe a report he prepared regarding his visit to the Property, which included the photographs he had taken there. He recalled Appellant informing him that at least one of the other two structures on the Property was merely for temporary use. Fantaskey also recalled Appellant informing him about what he interpreted to be the presence of water under pressure or piped water in the main residence and the disbursement of spent water through a pipe out back. He explained that a property that has water under pressure or piped water is required to have an on-lot septic system and that a privy is not an acceptable means of dealing with waste water. Additionally, he explained that it was unlawful to discharge sink water, known as gray water, onto the

7

ground. He ultimately opined that the waste water system at the Property was in violation of the Sewage Facilities Act. (R.R. at 102a-18a.)

Fantaskey noted that Appellant admitted that she did not have a building permit for her son's temporary residence or a permit for a privy. He followed up the visit with a notice of violation to Appellant dated February 19, 2015, but did not hear back from her. He returned to the Property in June of 2015 and took additional photographs, which show a privy to be unlawfully within 50 feet of one of the temporary residences and lacking a vent. Fantaskey testified that he was unaware of any exemptions in the Privy Ordinance for a temporary structure or for religious reasons. He noted that he drove by the Property a couple of days prior to the hearing and it appeared that one of the two temporary structures was vacant. He was aware that the Township had initiated the civil penalty process under the Sewage Facilities Act and believed that $2,500.00 per week was in the middle of the allowed penalty range of between $500.00 and $5,000.00 per week. He also noted his belief that the Township has installed a public sewage line in front of the Property that would require a connection by Appellant and ultimately prevent him from issuing her a waste water system permit. (R.R. at 121a-40a.)

On cross-examination, Fantaskey stated that there were at least two privies on the Property but that he never inspected either. Even if one of the privies collected waste in a bucket and dumped it into another privy with a true holding tank, a scenario set forth by Appellant's counsel, Fantaskey opined that it would be a violation of the Sewage Facilities Act. He reiterated that one of the privies, next to the newer structure, was too close and not properly vented. He noted that the Privy Ordinance mandates a concrete vault underneath the structure and that the structure must be 50 feet from a dwelling and include a self-closing door and roof vent. He also reiterated that the

8

Sewage Facilities Act does not include an exemption for religious reasons. He could not point to a definition in the Sewage Facilities Act for water under pressure but noted that water piped from a spring can maintain 30 pounds of pressure in certain situations, such as a spring located up slope. Finally, he noted that studies have revealed that discharged gray water from a house has a bacteria count as high as that of black water discharged from a septic tank. (R.R. at 158a-84a.)

At the December 1, 2016 hearing, Appellant called as a witness Randy Brown, a former Township supervisor for 18 years and former member of the Sugar Grove Area Sewer Authority. He indicated that during his tenure the Township had enacted an ordinance setting forth a range of fines from $300.00 to $2,500.00 but denied that the Township ever intended to impose an automatic maximum amount for violations. He stated that the amount of the fine was usually discussed by the board of supervisors and the solicitor. On cross-examination, Brown admitted that he played no part in the fines assessed against Appellant and that the amount of a fine would generally depend on the type of violation. (R.R. at 186a-97a.)

Appellant next recalled Liffner to the stand. She testified that the Township's board of supervisors determined the amount of the fine to be assessed against Appellant. She denied that only Old Order Amish have been fined for violations related to privies but noted that they were the only people in the Township that utilized the same. She explained that the original fines related to the six violations of the Sewage Facilities Act and that the $2,500.00 weekly amount represented a penalty for non-payment of the fines. She acknowledged that in her position as Township secretary she never advised Appellant of her right to appeal the violations/penalties and was unaware if the Township solicitor had so advised Appellant. (R.R. at 197a-209a.)

9

On cross-examination by counsel for the Township, Liffner identified an August 20, 2015 letter from the Township solicitor to Appellant advising that a hearing would be held on September 15, 2015, with respect to her violations of the Sewage Facilities Act and cautioned that a potential civil penalty between $300.00 and $2,500.00 per violation may be assessed, as well as a weekly assessment of $2,500.00 for each week the violations continue unabated. She stated that Appellant never responded to this letter and did not appear at the hearing. She also identified a notice of assessment dated September 16, 2015, which advised Appellant of the imposition of a civil penalty of $15,000.00 ($2,500.00 for each of her six Sewage Facilities Act violations) and a continuing assessment of $2,500.00 per week for each week the violations remain unabated. Liffner noted that this assessment also advised Appellant of her right to appeal within 30 days. Liffner next identified a demand for payment letter dated October 30, 2015, to which Appellant again did not respond. (R.R. at 209a-20a.)

Appellant next presented the testimony of Henry Byler, one of Appellant's sons who had built and resided in one of the temporary residences on the Property. He identified the other temporary residence as belonging to his brother Marvin. He stated that he sought and was denied a temporary dwelling permit from the Township's building inspector. He stated that his privy had a bucket in which he and his wife would relieve themselves, and that he would then dump the waste in his mother's holding tank. On cross-examination, Mr. Byler testified that he and his wife had no water and bathed at his mother's house. He did not know where the water from the tub drain is discharged. He admitted to dumping cooking water and dish water onto the ground outside his temporary residence. (R.R. at 228a-37a.)

10

Appellant then testified on her own behalf. She indicated that when she and her husband purchased the Property, the house and the privy were already there. She stated that her privy is regularly pumped and there is only one true privy on the Property. She confirmed that her son Henry moved out of the temporary residence on the Property, which was vacant at the time of hearing, and that another son, Marvin, lives in the other temporary residence with his wife. She described the building next to Marvin's residence as a portable, with no hole or vault dug in the ground underneath, and the waste therefrom being deposited in her privy. Appellant testified that she does have running water in her house through a one-inch pipe from a nearby spring that sits slightly above her residence. She stated that waste water from the house exits out the back of the house through a pipe, but she was unsure how far away from the house the actual discharge occurs. She indicated that she has no income and relies on her sons earnings from carpentry work for support. She also noted that she did not understand the letters/notices she received from the Township. (R.R. at 238a-55a.)

On cross-examination, Appellant testified that she has a spigot in her house to access water. She stated that she believes the waste water from her house is transported through a pipe to an area behind her house that consists of brush and weeds. She admitted that this waste water is deposited onto the ground and not into a holding tank. While she recalled someone in uniform coming to the Property and handing her papers, she reiterated that she did not understand what these papers meant. She also admitted that she never obtained a building permit for her son's residences or a sewer permit. (R.R. at 256a-65a.)

The Township then recalled Fantaskey as a rebuttal witness. He testified that piped water coming into a home with a valve or spigot to turn it on or off constituted water under pressure to which the provisions of the Sewage Facilities Act

11

applied. He explained that waste water contains harmful bacteria and, if it is deposited onto the ground, it can be carried to other water sources. He indicated his belief that water that is fed by gravity can create water under pressure. On cross-examination, Fantaskey could not point to a section of the Sewage Facilities Act that characterizes water in a pipe as pressurized water. He explained that waste water is normally emptied into a septic tank and then discharged into a sand mound or in-ground seepage bed to treat any bacteria or pathogens before it is discharged into the ground. He also stated that many water wells in the Township had been contaminated with bacteria but could not recall if they were Amish wells. On re-direct examination, he noted that a privy cannot be used when water is piped into a home. On re-cross examination, he indicated his belief that a municipal sewer line runs in front of the Property and that Appellant would be required to connect her privy to that line and use an electric grinder pump to transport the sewage from the privy to the line. (R.R. at 268a-76a.)

**Trial Court Opinion and Order**

By order dated April 13, 2017, the trial court directed Appellant, within 30 days, to arrange with the Township to have all violations as found in its accompanying opinion remedied and addressed. If Appellant failed to make such arrangements or failed to act in good faith, the trial court directed the eviction of Appellant and any residents of the Property, with the assistance of the Sheriff, if necessary, until such time as the violations were resolved. Finally, the trial court directed Appellant to pay no more than $100.00 per month, which was the maximum amount that the trial court determined Appellant had the ability to pay, towards her outstanding fines/penalties.

12

In an accompanying opinion, the trial court first addressed the Township's Privy Ordinance, noting that the same provided that "no privy shall be installed, utilized or otherwise placed in service by an owner or person until such owner or person has obtained a privy permit from the Township." (Trial court op. at 2) (referencing section IV of the Privy Ordinance). The trial court stated that the Property contains three residences, all of which were serviced by a privy,[5] but that the Township neither granted a permit for a privy, nor did it inspect and approve an on-lot sewage system servicing all three residences. *Id.* While Appellant's main residence and privy preceded adoption of the Privy Ordinance, the trial court noted that the other two residences were constructed after its adoption and were in fact occupied without any certificates of occupancy having been issued. *Id.* at 2-3.

The trial court indicated that Appellant raised two arguments, the first being that the privy was installed on the Property prior to the purchase by herself and her husband, and the second being that the installation of privy pre-dated the Privy Ordinance. *Id.* at 3. The trial court noted that both of these arguments focused on the term "installed" but ignored the use of the term "utilized" in the Privy Ordinance and that a violation occurs if a person simply utilizes a privy without a permit. *Id.* However, the trial court further noted that the claimed violation of the Privy Ordinance was "complicated by the definition of privy found therein," which defines the same as "a watertight receptacle . . . which receives and retains sewage where water under pressure or piped waste water is not available." *Id.* at 4 (referencing section II(A) of the Privy Ordinance). The trial court seemingly concluded that since Appellant has available water under pressure or piped waste water at her residence, she could not by

---

[5] The trial court seemingly concluded, based upon the testimony of Appellant and her son, Henry Byler, that there was only one privy on the Property.

definition have a privy at the Property or otherwise be utilizing one without a permit in violation of the Privy Ordinance. *Id.*

Despite this conclusion, the trial court proceeded to address the Sewage Facilities Act regulations with respect to privies. The trial court first referenced the definition of privy under section 71.63(f) of these regulations, which states that "[a] privy or chemical toilet is designed to receive sewage where there is no water under pressure and no piped wastewater." 25 Pa. Code §71.63(f). The trial court concluded, without explanation, that with such a definition, unlike the definition under the Privy Ordinance, "it is possible for a privy to be used (improperly) where water under pressure is available." (Trial court op. at 4.)

The trial court then stated that there are a number of provisions establishing conditions for the lawful use of privies, including section 71.63(f)(1) of the regulations, 25 Pa. Code §71.63(f)(1), which mandates submission of a site plan and soil and site testing as conditions precedent for use of a privy, none of which occurred in this matter. *Id.* at 4-5. The trial court also referenced section 72.22 of the regulations, 25 Pa. Code §72.22, which prohibits a person from installing an on-lot sewage system or constructing or occupying a building served by such system without a permit, and noted that the residences occupied by Appellant's sons were constructed and serviced by a sewage system without this permit. *Id.* at 5. The trial court noted that a similar provision was found in section 7(a)(1) of the Sewage Facilities Act, which states, in pertinent part,

> No person shall install, construct, or award a contract for construction, or alter, repair or connect to an individual sewage system or community sewage system or construct, or request bid proposals for construction, or install or occupy any building or structure for which an individual sewage system or community sewage system is to be installed without first obtaining a permit indicating that the site and

14

the plans and specifications of such system are in compliance with the provisions of this act and the standards adopted pursuant to this act.

35 P.S. §750.7(a)(1). The trial court next concluded that Appellant violated section 72.30 of the regulations, 25 Pa. Code §72.30, and section 7(b)(3) of the Sewage Facilities Act, 35 P.S. §750.7(b)(3), by covering a sewage system and occupying structures serviced by said system prior to inspection and approval of the same by the Township.[6] *Id.* at 6-7. The trial court further concluded that Appellant violated section

---

[6] Section 7(b)(3) of the Sewage Facilities Act provides, in pertinent part, that "[n]o system or structure designed to provide individual or community sewage disposal shall be covered from view until approval to cover the same has been given by the body which issued the original permit or its authorized representative." 35 P.S. §750.7(b)(3). Section 72.30 of the regulations states,

   (a) No part of an individual or community onlot sewage system may be covered until a final inspection is conducted and final written approval is given by the local agency.

   (b) The sewage system shall be inspected, approved and covered before the structure is occupied by a person.

   (c) The applicant shall notify the local agency when the installation of the sewage system is completed and ready for inspection.

   (d) The applicant may cover the individual or community onlot sewage system upon receipt of written approval by the local agency. If 72 hours have passed, excepting Sundays and holidays, since the local agency received the notification of completion required by subsection (c), the applicant may cover the sewage system unless final written approval to cover has been refused by the local agency.

   (e) The local agency may inspect and make tests before, during or after construction and may by order require a sewage system to be uncovered at the expense of the applicant, if the sewage system has been covered contrary to this chapter.

   (f) When the inspection reveals that the installation of the sewage system is contrary to the permit application or in violation of the act or this part, the permit shall be revoked and the provisions of §§72.28(b)

15

73.11(c) of the regulations, 25 Pa. Code §73.11(c), by allowing kitchen and bath waste water to be discharged onto the ground instead of first being discharged into the required treatment tank, which Appellant conceded at the hearings. *Id.* at 7. Finally, the trial court stated that section 14 of the Sewage Facilities Act, 35 P.S. §750.14, considers a violation of section 7 to be a nuisance that shall be abatable under the law. *Id.*

The trial court next addressed Appellant's religious beliefs, recognizing the sincerity of the same but also recognizing its obligation to protect the health, safety, and welfare of the community in which Appellant resides, which is the first stated purpose under section 3 of the Sewage Facilities Act, 35 P.S. §750.3. *Id.* at 8. The trial court referenced testimony from the hearings regarding an environmental hazard in the nature of E. coli bacteria being found in the area and concluded that the community's interest in safety overrides Appellant's interest in non-compliance for religious reasons. *Id.*

The trial court next concluded that Appellant violated numerous provisions of the UCC, including sections 403.62(a) (relating to a building permit), 403.62a(b) (relating to the submission of construction documents, including plans and specifications), and 403.62a(e) (relating to submission of a site plan), 34 Pa. Code §§403.62(a), 403.62a(b), 403.62a(e); 403.45(c) (relating to inspection), 34 Pa. Code §403.45(c); and 403.46 and 403.65 (both relating to certificates of occupancy), 34 Pa. Code §§403.46, 403.65. The trial court noted that Appellant violated each of these

---

and (c) and 72.29 (relating to revocation of permits; and review of denials and revocations) apply.

25 Pa. Code §72.30(a)-(f).

16

provisions when she allowed her two sons to build additional residences on the Property. *Id.* at 8-9.

The trial court rejected Appellant's argument that the additional residences were excluded from the provisions of the UCC because they were temporary and because of her religious beliefs. The trial court first noted that one of these additional residences remained occupied as of the date of the hearing and, hence, was not temporary. The trial court also proceeded to cite to the Pennsylvania Construction Code Act (PCCA)[7] for the proposition that no residence could ever qualify as a temporary structure because the same is defined in section 104(b)(8) as being,

> (i)   Erected for the purpose of participation in a fair, flea market, arts and crafts festival or other public celebration.
>
> (ii)  Less than 1,600 square feet in size.
>
> (iii) Erected for a period of less than 30 days.
>
> (iv)  Not a swimming pool, spa or hot tub.

35 P.S. §7210.104(b)(8). Essentially, the trial court concluded that each of these criteria must be met in order to qualify as a temporary structure.

As to any exemption for religious reasons, the trial court noted that section 901(b) of the PCCA is very limited in that regard, providing that,

> (1)  An applicant for a construction permit for a dwelling unit or one-room schoolhouse utilized by a member or members of a recognized religious sect may file an application with a code administrator to be exempted from the Uniform Construction Code, as provided in this subsection, which conflicts with the applicant's religious beliefs. The

---

[7] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§7210.101-7210.1103.

17

application shall state the manner in which the provision conflicts with the applicant's religious beliefs and shall include an affidavit by the applicant stating that:

(i) the applicant is a member of a recognized religious sect;

(ii) the religious sect has established tenets or teachings which conflict with:

(A) an electrical provision of the Uniform Construction Code;

(B) a lumber or wood provision, not relating to pressure treatment, of the Uniform Construction Code; or

(C) a plumbing provision of the Uniform Construction Code.

(iii) the applicant adheres to the established tenets or teachings of the sect;

(iv) in the case of a dwelling unit, the dwelling unit will be used solely as a residence for the applicant and the applicant's household; and

(v) in the case of a one-room schoolhouse, the one-room schoolhouse will be used solely by members of the religious sect.

35 P.S. §7210.901(b)(1)(i)-(v). The trial court stated that Appellant never filed any such religious beliefs exemption application with the Township.

Finally, the trial court addressed Appellant's ability to pay the fines and penalties assessed against her, which totaled $160,000.00 as of October 24, 2016. The trial court concluded that, while it did not deny the validity of the amount owed by

Appellant, because she was a widow, had only an 8th grade education, had no source of income, and was living in the main residence of the Property with 8 of her 10 children, she had the present ability to pay no more than $100.00 per month.

Appellant thereafter filed post-trial motions but the same were denied by the trial court by order dated June 7, 2017.  Appellant then filed a notice of appeal to this Court.

## Discussion

On appeal,[8] Appellant raises four issues.  First, Appellant argues that the trial court erred as a matter of law in failing to afford her the religious freedom protections of the First Amendment to the United States Constitution and Article I, section 3 of the Pennsylvania Constitution[9] in the context of concluding that she was in violation of the Township's Privy Ordinance, the Sewage Facilities Act, and the

---

[8] Our scope of review of the decision of a common pleas court in a non-jury trial is limited to determining whether the common pleas court's factual findings are supported by substantial evidence and whether the trial court committed an error of law.  *McGaffic v. City of New Castle*, 74 A.3d 306, 310 n.8 (Pa. Cmwlth. 2013).

[9] The First Amendment provides, in pertinent part, that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. CONST. amend I.  Article I, section 3 of the Pennsylvania Constitution provides that,

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

PA. CONST. art. I, §3.

19

UCC.[10]  Second, Appellant argues that the trial court erred in applying the Privy Ordinance retroactively to a privy installed on the Property prior to enactment of this Ordinance.  Third, Appellant argues that the trial court erred in concluding that she violated the UCC with regard to building permits, as the later-built residences at issue were temporary structures exempt from the permit requirement.  Finally, Appellant argues that the trial court erred in not specifically determining the amount of the fines and/or penalties imposed by the Township.

**Religious Freedoms in the Context of the Privy Ordinance, the Sewage Facilities Act, and the UCC**

Appellant first argues that the trial court erred as a matter of law in failing to afford her the religious freedom protections of the First Amendment to the United States Constitution and Article I, section 3 of the Pennsylvania Constitution in the context of concluding that she was in violation of the Township's Privy Ordinance, the Sewage Facilities Act, and the UCC.  In the course of this argument, Appellant points to the "obvious inconsistency" between the relief requested by the Township and the trial court's decision herein.  (Appellant's brief at 11.)  We must agree with Appellant in this regard.

As Appellant notes, the complaint filed by the Township sought injunctive relief to prevent further violations of the Township's Privy Ordinance, the Sewage

_____

[10] Appellant further alleges in the context of this argument that the trial court erred in failing to consider the effects of the substantial burden on her by imposing civil penalties for failing to connect her residence to the Township's sewer system, which would require the use of an electric grinder pump in violation of her religious beliefs prohibiting the use of electricity and indoor plumbing.  However, Appellant's argument in this regard is misplaced as this is not a case about connecting to the Township's sewer system.  Instead, this case involves Appellant's purported violations of the Township's Privy Ordinance and the Sewage Facilities Act and its regulations.

20

Facilities Act, and the UCC, as well as abatement of nuisances related thereto. However, the trial court never addressed the issue of an injunction but instead merely directed Appellant to address and remedy all violations as found by the trial court. In other words, as Appellant states, "[t]he relief granted was not responsive to the general nature of the relief requested." (Appellant's brief at 12.) Additionally, while not questioning the sincerity of Appellant's religious beliefs as a member of the Old Order Amish and acknowledging certain constitutional protections in both the United States and Pennsylvania Constitutions, the trial court concluded that those protections were overridden by the Sewage Facilities Act's purpose of protecting the health, safety, and welfare of the citizenry. The trial court substantiates this conclusion by vaguely referencing testimony of an environmental hazard in the nature of high levels of E. coli bacteria being found in the area, without any explanation of how Appellant's purported violations contributed to or exacerbated this hazard. Moreover, the trial court ignores additional protections provided by the Religious Freedom Protection Act,[11] namely section 2(2), which states that,

> The General Assembly intends that all laws which it has heretofore enacted or will hereafter enact and all ordinances and regulations which have been or will be adopted by political subdivisions or executive agencies shall be construed so as to avoid the imposition of substantial burdens upon the free exercise of religion without compelling justification.

71 P.S. §2402(2).

Thus, this Court must remand the matter to the trial court to address the issues discussed above. However, there is sufficient discussion in the trial court's opinion to address Appellant's remaining arguments.

---

[11] Act of December 9, 2002, P.L. 1701, *as amended*, 71 P.S. §§2401-2407.

21

## Retroactive Application of the Township's Privy Ordinance

Appellant argues that the trial court erred in applying the Township's Privy Ordinance retroactively to a privy installed on the Property prior to enactment of this Ordinance.[12]  We agree.

There is no question that the privy serving the main residence on the Property was installed by a prior owner and was in use prior to the Township's enactment of its first Privy Ordinance in 1993.  Indeed, the Township concedes the same in its brief to this Court.  *See* Township's Brief at 29.  Nevertheless, both the Township in its brief, and the trial court in its opinion, rely on section IV of the Privy Ordinance to rebut Appellant's arguments regarding retroactivity.  Section IV(A) of the Privy Ordinance provides as follows:

> Upon and after the enactment of this Ordinance, no privy shall be installed, utilized **or otherwise placed in service** by any owner or person until said owner or person has obtained a privy permit from the Township.

(Appellant's brief, Exhibit C) (emphasis added).[13]  Both the Township and the trial court rely on the use of the term "utilized" in this section as evidencing the Township's intent that the Privy Ordinance was to apply retroactively.  Generally speaking, however, a law must clearly state that it is retroactive in order to be applied in such a

---

[12] As noted above, a question arises as to whether the Property includes one or two privies, which must be clarified on remand.  Additionally, we note that the trial court's opinion is unclear as to whether Appellant was actually in violation of the Privy Ordinance.  Indeed, the trial court seemingly rendered contradictory findings that Appellant violated the Privy Ordinance by using a privy without a permit and that Appellant was not utilizing a privy at all.  To the extent the trial court found the former, we will address this issue above.

[13] Both the 1993 and 2012 versions of the Privy Ordinance were attached as exhibits to Appellant's brief.

manner. Indeed, section 1926 of the Statutory Construction Act of 1972, entitled "Presumption against retroactive effect," provides that "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. §1926.[14] We cannot agree with the Township or the trial court that section IV(A) of the Privy Ordinance "clearly and manifestly" represents an intent that the same be applied retroactively. To the contrary, the phrase "utilized or otherwise placed in service" in this section may only apply to privies that were "installed" on or after the enactment of the Privy Ordinance.

Further, the use of the word "or" in this section of the Privy Ordinance has the effect of a conjunctive, joining together of two or more verbs into a single, positive, correlative state. In other words, after the date on which the Ordinance was passed, a privy cannot be "installed"; and if it has been installed prior to the Ordinance, but no further action was taken with respect to it, the "installed" privy cannot be "utilized" or "placed into service" after the effective date of the Ordinance. Again, here, the privy serving the main residence was installed and in use well before the enactment of the Privy Ordinance. Indeed, if the term "utilized" were interpreted to mean *any* use of a privy after the effective date of the Ordinance, this would effectively nullify the "placed into service" language and expand the scope of the Ordinance beyond that which the plain language permits.

Moreover, in its brief, the Township cites to section III of the Privy Ordinance, providing that the "operation of privies within the Township shall hereinafter be governed by the terms of this Ordinance," and section VIII(D), providing

---

[14] This Court has applied section 1926 of the Statutory Construction Act of 1972 to ordinances. *See*, *e.g.*, *Kuziak v. Borough of Danville*, 125 A.3d 470 (Pa. Cmwlth. 2015).

23

that "privies may not be utilized or constructed upon premises served by water under pressure."[15] Again, however, we cannot conclude that the language of either of these sections of the Privy Ordinance reflects a clear intent to apply the same retroactively. Thus, we must agree with Appellant that the trial court erred in retroactively applying the Township's Privy Ordinance to the Property.

**UCC Violations**

Next, Appellant argues that the trial court erred in concluding that she violated the UCC with regard to building permits, as the later-built residences at issue were temporary structures exempt from the permit requirement. We agree to the extent that the trial court seemingly concluded that Appellant herself was in violation of the UCC, but disagree to the extent that the trial court concluded that the Little Ash Trust was in violation.[16]

As the trial court noted in its opinion, Appellant's sons' residences do not meet the definition of temporary structures found in section 104(b)(8) of the PCCA, which has been adopted by the Township through its UCC Ordinance, Ordinance No. 04-06-01. More specifically, section 104(b)(8) requires that a temporary structure be,

---

[15] The Township cites to this language as being found in section VII of the Privy Ordinance. However, the Township was referring to the 1993 Privy Ordinance, which was repealed and replaced in 2012. The 2012 Privy Ordinance contains identical language in the section noted above.

[16] In discussing the UCC violations, the trial court continuously refers to Appellant herself as having committed the violations. However, as noted above, there is no dispute that at the time the Township filed its complaint in this matter, the Little Ash Trust owned the Property. Indeed, the Little Ash Trust owned the Property as of September 17, 2010. Further, the testimony of record indicates that the residences occupied by Appellant's sons were constructed in 2012 and 2015, respectively, at a time when the Little Ash Trust owned the Property.

(i)     Erected for the purpose of participation in a fair, flea market, arts and crafts festival or other public celebration.

(ii)    Less than 1,600 square feet in size.

(iii)   Erected for a period of less than 30 days.

(iv)    Not a swimming pool, spa or hot tub.

35 P.S. §7210.104(b)(8).  While Appellant suggests that these provisions are to be read disjunctively, rather than conjunctively, such a reading would produce an absurd result, as any structure less than 1,600 square feet, even if a permanent dwelling, would be excluded from the requirements of the PCCA.  Pursuant to section 1922 of the Statutory Construction Act, in ascertaining the intention of the General Assembly in enacting a statute, we can presume that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. §1922(1).  Reading this provision conjunctively, Appellant's sons' residences simply do not meet these criteria.  Further, Appellant's son, Henry Byler, specifically testified that the structures were not temporary, but instead were intended as residences for himself and his brother.  Thus, the trial court did not err in concluding that Appellant violated the UCC by failing to obtain building permits for the two, later-built residences on the Property.

**Fines/Penalties**

Finally, Appellant argues that the trial court erred in not specifically determining the amount of the fines and/or penalties imposed by the Township pursuant to the Sewage Facilities Act and by directing her to pay $100.00 per month towards the same.  We agree.

25

Contrary to the trial court, the Township did not request that the trial court direct Appellant to pay any outstanding fines/penalties, which apparently totaled $160,000.00 as of October 24, 2016, seven months before the trial court issued its decision and order. As Appellant properly notes, the trial court did not include, nor did the Township in any prayer for relief in any count of its complaint request, payment for the same. Rather, in its complaint, the Township merely asked for injunctive relief to correct any purported violations and abate any nuisances, as well as any charges or costs incurred by the Township in this abatement. While the Township presented evidence during the hearings regarding the fines/penalties imposed upon Appellant, it again never requested that the trial court direct payment for the same in its opinion and order. Thus, the trial court erred to the extent that it *sua sponte* awarded relief that the Township never requested.[17]

**Conclusion**

For the reasons stated above, the trial court's order is vacated insofar as it grants relief beyond that which was requested by the Township, including the directive that Appellant pay $100.00 per month towards the fines/penalties assessed by the Township. The matter is remanded to the trial court to issue a new opinion considering the issue of the religious freedom protections of the First Amendment to the United States Constitution and Article I, section 3 of the Pennsylvania Constitution as well as the Religious Freedom Protection Act. The trial court's order is reversed to the extent that it found that the Privy Ordinance applied retroactively. The trial court's order is

---

[17] In light of the conclusion above, it is not necessary to reach the issue raised by Appellant regarding the reasonableness of the $100.00 per month payment schedule *sua sponte* imposed by the trial court. However, we note that if the Court were to reach this issue, we have serious concerns over the reasonableness of the same given that Appellant was a widow with an 8th grade education who lived in a residence with 8 of her 10 children and no source of income.

26

affirmed to the extent that it found that the Little Ash Trust was in violation of the applicable UCC provisions by failing to obtain building permits for the two later-built residences on the Property, but reversed to the extent that it found Appellant was individually liable for the same.

Accordingly, the trial court's order is affirmed in part, reversed in part, and vacated in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

Judges Simpson, Brobson and Covey concur in result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sugar Grove Township           :
                                 :   No. 937 C.D. 2017
v.                      :
                                 :
Iva H. Byler, Individually and as   :
Trustee of the Little Ash Trust,    :
                   Appellant    :

## ***ORDER***

AND NOW, this 20th day of July, 2018, the order of the Court of Common Pleas of the Thirty-Seventh Judicial District, Warren County Branch (trial court), dated April 13, 2017, is hereby affirmed in part, reversed in part, and vacated in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge